**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02174-RBJ-NYW

NATHANIEL J. HARVEY, III,

    Plaintiff,

v.

SEARGENT [sic] GONZALEZ, individual and official, and
SEARGENT [sic] SCHMUTLER, individual and official,

    Defendants.

___

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
___

Magistrate Judge Nina Y. Wang

    This civil action comes before the court on Defendants Gonzalez and Schmutzler's (collectively, "Defendants") Motion to Dismiss Second Amended Complaint ("Motion to Dismiss").[1] [#38, filed June 5, 2015]. The matter was referred to this Magistrate Judge pursuant to the Order Referring Case [#27] dated March, 13, 2015 and the memorandum dated June 8, 2015. [#39]. This court has reviewed the matter, the entire case file, and the applicable law and is sufficiently advised as to the issues presented. For the reasons stated below, this court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.

___

[1] Defendant Schmutzler's name is misspelled in Plaintiff's filings, but is corrected in Defendants' Motion to Dismiss. [#38]. The court uses the correct spelling in this Recommendation, but for the sake of consistency, the court does not *sua sponte* correct the case caption. To the extent any

# PROCEDURAL HISTORY

Mr. Harvey is a *pro se* prisoner in the custody of the Colorado Department of Corrections ("CDOC"). He attempted to initiate this action on August 5, 2014, by filing with the court an affidavit concerning the censorship of his incoming legal mail and tendering an order titled "Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order." [#1]. The court filed the lawsuit as one brought pursuant to 42 U.S.C. § 1983 because Mr. Harvey is a state prisoner challenging a condition of his confinement and did not appear to be asserting a challenge to the fact or duration of his conviction or sentence. [*See* #3]. The court ordered Plaintiff to obtain the court-approved forms for filing a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 and a Prisoner Complaint and to file a complaint that complied with Rule 8 of the Federal Rules of Civil Procedure within thirty days of the date of the order. [*Id.*]

On September 8, 2014, Mr. Harvey filed a twenty-seven page Prisoner Complaint, along with sixty-two pages of attachments, and named eight prison officials as defendants. [#4]. He also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on September 15, 2014. [#5, #7]. On October 21, 2014, Mr. Harvey filed a motion requesting that several named defendants be dismissed from this action. [#8]. On October 29, 2014, the court granted that motion, leaving Defendant Gonzalez, Defendant Schmutzler, and Sergeant Dan Dent as the named defendants, and ordered Plaintiff to file an amended complaint to assert his remaining claims against those defendants. [#9]. The order reminded Plaintiff that his amended complaint must satisfy the pleading requirements under Rule 8, demonstrate that each of the named defendants personally participated in the asserted constitutional violations,

---

portion of this case survives dismissal and/or summary judgment, it may be appropriate to

and, to the extent he sought to assert supervisory liability as to any defendant, must allege and demonstrate that the defendant was responsible for the continued operation of a policy that caused the complained of constitutional harm and acted with the requisite mental state to cause the harm alleged. [*Id.*]

On November 20, 2014, Mr. Harvey filed an Amended Complaint [#12] along with a Motion for Temporary Restraining Order. [#15]. On January 15, 2015, the court ordered Plaintiff to file a Second Amended Complaint to cure the "vague and conclusory" nature of Plaintiff's multiple claims for constitutional violations and to add supporting factual allegations. [#19]. In its order, the court explained that isolated incidents of prison officials opening legal mail do not rise to the level of a First Amendment violation and that to prevail on an access to the courts claim, a prisoner must demonstrate an actual injury from the alleged interference. The court also informed Plaintiff that he could not maintain claims against prisoner officials or administrators solely on the basis that they denied his grievances. [*Id.*]

On February 9, 2015, Plaintiff filed the Second Amended Complaint [#20], which is currently the operative complaint in this action. In his First Claim for Relief, Plaintiff asserts that Sergeant Dent violated his First, Fifth, Sixth, and Eighth Amendment rights by opening, censoring, confiscating, and destroying a piece of legal mail. *See* [#20 at 5]. He further alleges that he was denied his First Amendment right to access the courts because Sergeant Dent confiscated and destroyed part of Magistrate Judge Boland's recommendation in *Harvey v. Segura, et al.,* Civil Action No. 13-cv-01574-RBJ-NYW (D. Colo. June 14, 2013). Mr. Harvey additionally alleges a violation of his Sixth Amendment right when Defendant Dent denied him the "right of private consultation with his investigator." [*Id.*] In the Second Claim for Relief,

---

correct the caption.

Mr. Harvey alleges that Defendant Gonzalez violated his First, Fourth, Sixth, and Fourteenth Amendment rights by opening his legal mail on June 6, 2014 and July 8, 2014. [#20 at 7]. He further claims that as a result of filing administrative grievances, Defendant Gonzalez retaliated against him by making "bodily injury threats" and by "seizing important exhibits and affidavits" during a search of his cell on July 31, 2014. [*Id.*] Mr. Harvey alleges that the loss of *pro se* work product deprived him of the opportunity to file briefs or memoranda in Civil Action No. 13-cv-1574-RBJ-NYW. [*Id.*] Mr. Harvey additionally alleges that Defendant Gonzalez discriminated against him and violated his equal protection rights. [*Id.*] In his final Third Claim for Relief, Mr. Harvey alleges that Defendant Schmutzler violated his constitutional rights of freedom of exercise of religion, due process, and equal protection by wrongfully confiscating his "religious Holy Qur'an with Shi'ite Commentary" on November 29, 2013. [#20 at 9]. Plaintiff seeks declaratory relief, injunctive relief, and punitive damages in the amount of $50,000 as to each Defendant. [#20 at 13].

Section 1915 and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b). On March 12, 2015, the court dismissed all claims asserted as to Sergeant Dent for failure to state a cognizable constitutional violation, and thereafter dismissed Sergeant Dent as a defendant. [#25 at 4-7]. The court likewise dismissed three of the four claims it ascertained as asserted against Defendant Gonzalez. [*Id.* at 7-8]. The court made clear that only two claims, *i.e.*, the First Amendment unlawful retaliation claim asserted against Defendant Gonzalez and the violation of the right to freely exercise religion

4

under the First Amendment asserted against Defendant Schmutzler, remained and were being drawn to the Honorable R. Brooke Jackson and the undersigned Magistrate Judge. [*Id.*][2]

Defendants waived service on March 16, 2015. [#28]. On May 15, 2015, this court set a Status Conference to be held June 16, 2015. [#36]. Defendants filed the instant Motion to Dismiss on June 5, 2015. [#38]. Defendants then filed a Motion to Vacate the Status Conference [#44], which this court granted, noting that a status conference would be set, if necessary, following the disposition of the Motion to Dismiss. [#46]. Following the request and grant of an extension of time, Plaintiff filed a Response to the Motion to Dismiss on July 20, 2015. [#57]. Defendants did not file a Reply.

## STANDARD OF REVIEW

### I.   Fed. R. Civ. P. 12(b)(1)

Defendants contend that they are entitled to immunity from suit under the Eleventh Amendment and the doctrine of qualified immunity. Pursuant to Rule 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A

---

[2] On March 13, 2015, the Honorable R. Brooke Jackson, the presiding Judge in this matter, denied Plaintiff's Motion for Temporary Restraining Order without prejudice on the basis that four months had elapsed since the filing of that motion, and during the interim one defendant and several claims had been dismissed and Plaintiff had filed a Second Amended Complaint. [#26]. On April 1, 2015, Plaintiff filed a "Motion for Injunction to Preserve the Status Quo." [#29]. This court recommended that the motion be denied because the court could not ascertain the specific relief Plaintiff sought and due to his failure to demonstrate a likelihood of success on the merits, a likelihood that he would suffer irreparable harm in the absence of preliminary relief,

5

court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

## II.     Fed. R. Civ. P. 12(b)(6)

Defendants also contend that Plaintiff has failed to state a cognizable constitutional claim against either Defendant. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an

---

that the balance of equities tipped in his favor, and that the injunction was in the public interest.

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Harvey is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### I.   Eleventh Amendment Immunity

Defendants are sued in their individual and official capacities. [#20 at 1]. In their official capacity, they are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)). The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state defendants sued in their official capacities from liability for damages or equitable relief. *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995). In addition, state employees acting in their official capacities are not "persons" subject to suit under § 1983. *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). An exception to this general bar is a suit

---

[#31]. The court adopted the Recommendation in an order dated May 6, 2015. [#32].

in which a plaintiff seeks to prospectively enjoin a state official from violating federal law. *Johns*, 57 F.3d at 1552.

Accordingly, Plaintiff cannot pursue a § 1983 claim for damages against Defendants sued in their official capacity but may seek prospective injunctive relief, and may seek monetary damages as to Defendants in their individual capacity, should the court find that a constitutional violation has occurred. The court now turns to the question of whether Mr. Harvey has stated cognizable claims against Defendants under the First Amendment.

## II.     First Amendment

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted). Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

A.   **Retaliation**

Mr. Harvey alleges that he filed "step 1 through 3 grievances" against Defendant Gonzalez complaining that in June and July 2014, Gonzalez opened and censored Plaintiff's legal mail and left the opened mail "inside F 8-24 on the floor attached to the mail log." [#20 at 7]. Plaintiff alleges that as a result of filing the grievances against Defendant Gonzalez, he "received bodily injury threats for reporting staff misconduct." [*Id.*]

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights…even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). A retaliation claim requires a plaintiff to show: (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were substantially motivated as a response to plaintiff's constitutionally protected conduct. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009). *See also Green v. Snyder*, 525 F. App'x. 726, 729 (10th Cir. 2013). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (emphasis in original) (quotation marks and citation omitted). Additionally, a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers…would not have taken place." *Id.* (quotation marks and citation omitted).

As an initial matter, a prisoner's right to access the courts is protected by the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Additionally, this court assumes at this juncture that filing grievances pursuant to CDOC policy is a constitutionally-protected

activity. *See Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (concluding that prisoner's claim that prison officials retaliated against him for filing administrative grievances sufficiently stated a cognizable constitutional violation so as to survive dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)). *See also Green*, 525 F. App'x at 730 (assuming that a prisoner's filing of grievances pursuant to prison policy is a constitutionally protected activity for purpose of claim that prison case manager deliberately mishandled plaintiff's grievances so as to discourage him from pursuing relief against prison official).

However, in turning to the second factor, I cannot discern a cognizable injury suffered by Plaintiff from the allegations as set forth in his Second Amended Complaint, *i.e.*, an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Mr. Harvey attached to his Second Amended Complaint a copy of a CDOC Informal Resolution Form he submitted on August 14, 2014, reporting in relevant part that Defendant Gonzalez continued to retaliate against him by intercepting his legal papers.[3] [#20-1 at 1, #20-2 at 2]. Several days later, on August 25, 2014, Mr. Harvey completed a CDOC Grievance Form indicating that his request to modify his cell location, in order to remove himself from the interfering actions of Defendant Gonzalez, had been approved and "therefore the issue of staff harassment is resolved!" [#20-1 at 3]. The following month, Mr. Harvey again raised in a CDOC Grievance Form the issue of Defendant Gonzalez's alleged history of retaliation. [#20-1 at 4, #20-2 at 4]. Plaintiff's exhibits to his Second Amended Complaint demonstrate that he received the remedy he sought—to be removed from Defendant Gonzalez—and that he continued to report Defendant Gonzalez for retaliatory behavior after Gonzalez first allegedly threatened him in June and July

---

[3] The court may consider the documents that are central (and in this case, are attached) to Plaintiff's Second Amended Complaint without converting the instant Motion to Dismiss into one for summary judgment. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007).

2014.  Moreover, Plaintiff filed this lawsuit in August 2014, after the alleged retaliatory conduct occurred.  Taken together as true, it does not appear that Plaintiff has averred sufficient facts to establish that Defendant Gonzalez's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity of filing grievances or lawsuits.

For these reasons I find that Plaintiff has not stated a cognizable constitutional violation as to Defendant Gonzalez, and thus I refrain from considering the second inquiry of whether Defendant Gonzalez is entitled to qualified immunity as to Plaintiff's claim for retaliation.

### B.   Exercise of Religion

Mr. Harvey next alleges that Defendant Schmutzler confiscated his "religious Holy Qur'an with Shi'ite Commentary," and that he reads "Holy Qur'anic text after offering prayer." [#20 at 9].  Plaintiff claims Defendant Schmutzler's actions violated CDOC procedure and caused him to modify his "religious behavior."  [*Id.*]

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.  "Inmates…retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citation omitted).  These protections are not without reasonable limitations, and "a prison regulation imping[ing] on inmates' constitutional rights…is valid if it is reasonably related to legitimate penological interests." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone*, 482 U.S. at 348-49).

The Tenth Circuit has adopted a two-step inquiry for district courts considering whether a prisoner-plaintiff has stated a constitutional violation based on a free exercise claim.  The

11

plaintiff must first show that his "sincerely-held religious beliefs" were "substantially burdened." *Boles v. Neet,* 486 F.3d 1177, 1182 (10th Cir. 2007). Additionally, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). After the plaintiff satisfies this requirement, the prison officials-defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles,* 486 F.3d at 1182. Upon such a showing, the district court balances the factors set forth in *Turner v. Safley,* 482 U.S. 78, 89–91 (1987), to determine the reasonableness of the conduct:

> 1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay*, 500 F.3d at 1218-19 (quoting *Boles,* 486 F.3d at 1181).[4]

Defendants assume for the purposes of their Motion to Dismiss that Plaintiff has a sincerely-held religious belief, and therefore, this court will as well. [#38 at 6]. *See Snyder v. Murray City Corp.,* 124 F.3d 1349, 1352–53 (10th Cir. 1997) ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment," and is thus rarely appropriately raised on summary judgment let alone a motion to dismiss) (internal quotation omitted) (reversed *en banc* on other grounds). If the court assumes that Plaintiff has a sincerely-held religious belief, it should not require Mr. Harvey to demonstrate, in addition, that use of a Qur'an is "necessary" to the practice of his religion. *See Kay*, 500 F.3d at 1220 (holding a prisoner's belief in religious practices is constitutionally protected if the belief is "genuine and

sincere," even if those practices are not doctrinally "required" by the prisoner's religion."). Therefore, the next inquiry is whether Plaintiff has alleged that Defendant Schmutzler substantially burdened his ability to exercise his sincerely-held religious beliefs by confiscating his Qur'an.

A substantial burden on religious exercise exists "when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1315 (10th Cir. 2010). Plaintiff's statements in his Second Amended Complaint, such as "Sgt. Schmutzler's confiscation of my Holy Qur'an placed a great restriction and burden on me" and "the substantial burden truly pressured me to modify my religious behavior," [#20 at 9] are conclusory in nature, and without more, lack the factual support to nudge the claim "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247. *See also Rodrock v. Foulston*, 149 F.3d 1191, 1 (10th Cir. 1998) ("Although we must construe a pro se plaintiff's complaint with forbearance, we may not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions.") (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Indeed, Mr. Harvey does not allege that he required the specific Qur'an that was confiscated to fulfill his faith. [#20, #20-2 at 5-8].

---

[4] *Turner* is applicable even where the plaintiff is challenging a prison official's individual actions, as opposed to a regulation. *Boles*, 486 F.3d at 1181 n.4.

However, Mr. Harvey alleges in his Response that the confiscated Qur'an was his only Qur'an [#57 at 19], that he was instructed to seek a replacement Qur'an from the volunteer coordinator within the prison, and that the volunteer coordinator refused his request. [#57 at 11]. In addition, he alleges in his Second Amended Complaint that he has a right to read the Qur'an after his prayers. [#20 at 9]. He further alleges in his Response that without a Qur'an he read the Holy Bible after prayer, thereby modifying his religious practice. [#57 at 11]. *Cf. Handy v. Cummings*, 11–cv–00581–WYD–KMT, 2013 WL 1222415, at *18 (D. Colo. March 25, 2013) (declining to adopt recommendation and finding material issue of fact as to first prong of free exercise claim based on prisoner's verified complaint that the confiscation of his prayer book and prayer schedule prevented his ability to practice and learn his prayers in Arabic before Ramadan). Although a close call, affording Plaintiff the liberal construction of his pleadings and papers as is required of the court, I respectfully recommend that Plaintiff be allowed to proceed on his First Amendment claim for violation of the free exercise of religion.

In doing so, the court does not pass on whether Plaintiff can ultimately prevail on his claim against Defendant Schmutzler. Defendants raise in passing, and the exhibits to Plaintiff's Second Amended Complaint corroborate, that the Qur'an was confiscated because it was covered in tape and thus considered "altered." [#38 at 7; #20-2 at 6, 7 ("The book was taken from you do [sic] to the excessive amount of tape on the book causing it to be considered 'altered.'")]. Plaintiff asserts in one of his grievances attached to his Second Amended Complaint that his Qur'an "only had 1 piece of tape that could have been taken off with no problem," and that Defendant Schmutzler "allowed me to have a book called Islamic Doctrine that I have in my cell right now with more tape than was on my Holy Qur'an." [#20-2 at 7]. The fact that Defendant Schmutzler may have taken the Qur'an pursuant to a legitimate

14

penological interest, and whether that interest justified the conduct, is not apparent from the pleadings and thus not dispositive at this stage. *See Reid v. Wiley*, No. 07–cv–01855–PAB–KMT, 2009 WL 1537879, at *6 (D. Colo. May 29, 2009) (adopting recommendation that motion to dismiss free exercise of religion claim be denied and noting that "absent a more developed record, the court is unable to complete the four-factor balancing analysis set forth by the Supreme Court in *Turner v. Safley*"). *See also Mosier v. Maynard*, 937 F.2d 1521, 1526-27 (10th Cir. 1991) (reversing grant of summary judgment concerning prisoner asserting Native American religion, with instruction for district court to consider reasonableness of prison's exemption to grooming policy and application following "sufficient factual development and application of the *Turner* factors."). In addition, the fact that Defendant Schmutzler alone may not have caused Mr. Harvey's current circumstances, *i.e.*, the deprivation of any Qur'an, is not dispositive at this stage.

Having determined that Plaintiff states a claim for a constitutional violation under the Free Exercise Clause of the First Amendment, I next turn to whether the asserted constitutional right was clearly established as of the time of Defendant Schmutzler's actions. The Supreme Court held as early as 1972 that inmates "retain protections afforded by the First Amendment, *Pell v. Procunier,* 417 U.S. 817, 822, (1974), including its directive that no law shall prohibit the free exercise of religion." *O'Lone*, 482 U.S. at 348 (citing *Cruz v. Beto,* 405 U.S. 319, 92 (1972) (*per curiam* )). As a consequence of being incarcerated, a constitutional violation may not arise from the withdrawals or limitations of many privileges and rights, including those associated with the exercise of religion. *See id.* However, it was clearly established in 2013 that prison officials may not substantially burden an inmate's right to exercise his personal religious beliefs without some legitimate penological justification. *See*

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.") (quoting *Turner,* 482 U.S. at 89)).  Taking the factual allegations as true, it appears from the Second Amended Complaint and the exhibits attached thereto that CDOC regulations do not prohibit inmates from possessing an unaltered Qur'an, and that the avenue suggested to Plaintiff for pursuing a replacement Qur'an proved fruitless. In light of my finding that the record is undeveloped as to Defendant Schmutzler's motivations in confiscating Plaintiff's Qur'an and further inquiry would require examination of materials outside the four corners of the Second Amended Complaint and attachments, I respectfully recommend that passing on Defendant's assertion of qualified immunity is premature at this time, and is an inquiry better suited for summary judgment once a factual record is developed.[5]

## III.  Additional Arguments

Defendants recognize that "[a]ll claims and parties were dismissed…except for claim two (retaliation against Defendant Gonzalez) and claim three (free exercise of religion against Defendant Schmutzler)," [#38 at 1], and Mr. Harvey concedes the same.  [#57 at 3]. Nonetheless, Defendants raise arguments in their Motion to Dismiss that address claims previously dismissed by the court [#38 at 7-8], and Mr. Harvey responds in kind by asserting allegations to support those previously dismissed claims. [*See generally* #57].

As addressed above, the court screened this case pursuant to 28 U.S.C. § 1915(e)(2)(B) prior to Defendants filing the instant Motion to Dismiss.  [*See* #9, #19, #25].  In the Order to Dismiss in Part and to Draw Case, the court stated it would "not address at this time the merits of

---

[5] Even if the finding of qualified immunity were appropriate at this stage, Plaintiff could potentially proceed as to Defendant Schmutzler in her official capacity for declaratory and injunctive relief. [*See* #20 at 13].

the unlawful retaliation claim against Defendant Gonzalez and the First Amendment violation of the right to freely exercise [Plaintiff's] religion under the First Amendment against Defendant Schmutzler in the Second Amended Prisoner Complaint," and described these two claims as the "remaining claims." [#25 at 8]. Accordingly, arguments and responses as to any but these two claims are not properly before the court and therefore, are not considered herein.

## IV.    Punitive Damages

While I recommend that the Motion to Dismiss be denied as to Defendant Schmutzler, I do not find that the Second Amended Complaint identifies sufficient facts to support that she acted with evil motive or intent or with reckless or callous indifference. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). The operative pleading and Plaintiff's Response to the Motion to Dismiss indicate that Defendant Schmutzler confiscated the Qur'an pursuant to CDOC policy, and fails to allege sufficient facts, even if taken as true, to support a conclusion that she acted with evil motive or intent or with reckless or callous indifference. Indeed, as Plaintiff acknowledges, Defendant Schmutzler allowed him to keep his copy of the "Ahdab-AS-SALAT," an Islamic prayer book, and another book called "Islamic Doctrine." [#20-2 at 5, 7]. To the extent Plaintiff may assert that the volunteer coordinator acted with requisite animus in declining to replace the Qur'an, the volunteer coordinator is not a party to this lawsuit and no such facts are currently alleged in the Second Amended Complaint.[6] Thus, while Plaintiff's demand for nominal damages may survive dismissal, *see Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir.2001), *cert. denied*, 536 U.S. 904 (2002), his claim for punitive damages should not.

---

[6] In addition, Mr. Harvey fails to attach the response to his grievance that alleged that the Volunteer Coordinator denied his request for a copy of the Qur'an. [#20-2 at 8].

# CONCLUSION

For the reasons set forth in this Recommendation, this court respectfully recommends that the Motion to Dismiss Second Amended Complaint [#38] be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) **GRANTED** as to Defendant Gonzalez and the claim for retaliation;

(2) **DENIED** as to Defendant Schmutzler and the claim for free exercise of religion, in the form specifically set forth in the Second Amended Complaint and attachments; and

(3) **GRANTED** as to Plaintiff's request for punitive damages.[7]

DATED: November 24, 2015

BY THE COURT:

s/Nina Y. Wang
United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).